IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VINCENT WOODSON,<br><br>Defendant. | No. CR 11-00531 WHA<br><br>**ORDER DENYING MOTION TO SUPPRESS** |

**INTRODUCTION**

Defendant moves to suppress evidence obtained as a result of two warrantless searches and statements made by defendant after arrest. After full consideration of the parties submissions, including declarations, exhibits, oral argument, and supplemental briefing, the order finds that the officers' parole search of defendant on December 24, 2010, was lawful and the officers' arrest and search incident to arrest of defendant on April 9, 2011, was lawful. Defendant requests an evidentiary hearing. The order concludes no material facts are in dispute as to either search or the arrest, so there is no need for an evidentiary hearing. Defendant's motion to suppress is **DENIED**.

## STATEMENT OF FACTS

The Court makes the following factual findings based on its review of all submissions made on this motion. At issue in the motion are two searches and the arrest that preceded the second search.[1]

### 1. THE INCIDENT ON DECEMBER 24, 2010.

On December 24, 2010, at approximately 11:50 a.m., San Francisco Police Department Officers Christina Johnson and Nathan Bernard, assigned to Ingleside patrol, were on uniformed patrol in a marked police car driving inside the Sunnydale Housing complex. The officers observed a Hyundai Sonata traveling on Santos Street.

Officer Johnson immediately identified the driver to be defendant Vincent Woodson. Officer Johnson knew defendant Woodson to be a documented member of the Down Below Gangsters. As part of a homicide investigation, Officer Johnson had personally reviewed information relating to defendant Woodson. Based on her review of information, she learned defendant was on active parole with his primary offense being violation of Health and Safety Code Section 11351.5. She also knew defendant Woodson was a person of interest in an ongoing homicide investigation. Officer Johnson informed Officer Bernard that she knew the driver to be Vincent Woodson, who was on active parole. Officer Bernard conducted a record check of defendant Woodson in the patrol car and confirmed that defendant Woodson was on active parole status through January 28, 2011.

Based on confirmation of defendant Woodson's active parole status, the officers decided to effect a traffic stop on defendant Woodson in order to conduct a parole search. Upon exiting the patrol car, Officer Johnson approached the driver's side of the vehicle driven by defendant. Two males were also in the car, one in the front passenger seat and the other in the back seat.

---

[1] The government submitted a supplemental declaration after the close of briefing in support of its opposition to defendant's motion to suppress. Pursuant to Civil Local Rule 7-3(d), except as permitted by subsections one and two, once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval. The government sought leave to file a sur-reply in its opposition (Opp. at 1). Given defense counsel's deficient four-page motion, unsupported by declarations, and almost entirely devoid of citation to case law, the order concludes the government should be afforded an opportunity to respond to defense counsel's more substantive reply. As such, the request for leave to file a sur-reply is **GRANTED**. The government need not re-file its supplemental declaration, as it is deemed to be the government's sur-reply.

Officer Johnson asked defendant Woodson to provide her with his driver's license, registration, and proof of insurance. Defendant Woodson responded that he did not have a driver's license and was borrowing the car from a friend who was at a nearby beauty shop. Officer Johnson asked defendant Woodson, weighing approximately 220 pounds and approximately six feet tall, to exit and face the vehicle and place his hands behind his back. This positioning of defendant would permit Officer Johnson to safely conduct a parole search. However, defendant Woodson placed his hands behind his head, not his back. Officer Johnson asked a second time for defendant Woodson to place his hands behind his back. Again, he placed his hands behind his head, this time, lowering his elbows and looking left and then right. Officer Johnson observed defendant to be breathing heavily and have shaky hands, and asked a third time for defendant to place his hands behind his back. Defendant Woodson looked left and took off running. Officer Johnson grabbed a hold of defendant Woodson's shirt but was unable to hold on to him as he took off running. During this brief struggle, Officer Johnson observed a white object fall to the ground.

Officer Bernard commenced immediate foot pursuit of defendant Woodson. Officer Johnson notified dispatch of the foot pursuit. Several Ingleside SFPD units began to respond. Officer Bernard pursued defendant Woodson over a fence into Crocker Amazon Park and through the park, yelling, "Police! Stop!" multiple times. Defendant Woodson disobeyed the officer's orders and continued to run away. Officer Johnson followed Officer Bernard on foot pursuit of defendant Woodson until she turned back to the Hyundai and observed the two passengers exiting the vehicle and taking off running. She alerted dispatch to the their direction of travel, but lost sight of them. Officer Johnson headed back toward the patrol car to secure it and the Hyundai. As she approached the driver's side of the Hyundai, where she had engaged in a brief struggle with defendant, she saw a large plastic baggie about the size of a baseball containing individually wrapped off-white rocks that she suspected to be a cocaine base. She seized the baggie.

Meanwhile, Officer Polovina, who had responded to the dispatch call to assist, located defendant Woodson and detained him. Officers Park and Chang, who also responded to the dispatch call, saw two males matching the description of the two passengers and detained them both and transported them to the Ingleside station.

3

Defendant Woodson was also transported to the Ingleside station. At the station, Officer Polovina conducted a search of defendant and found $723 in cash as well as one $20 counterfeit bill on his person. Sergeants Browne and Labanowski interviewed defendant Woodson at the Ingleside station. Officer Almaguer tested a small portion of the suspected cocaine base that Officer Johnson found next to the driver's side door of the Hyundia driven by defendant. The substance tested positive for a cocaine base. The total amount of the substance weighed 37.1 grams, prior to testing. California Department of Corrections Agent Webber authorized a parole hold for defendant Woodson.

2. **THE INCIDENT ON APRIL 9, 2011.**

On April 9, 2011, SFPD Sergeant Lawrence McDevitt and Officers James Trail, Brian Hopkins, and Uang, were working in full uniform at the Sunnydale Housing SFPD substation. From inside the substation and with an unobstructed view, Officers Trail and Hopkins and Sergeant McDevitt observed an individual confronting a woman across the street and yelling at her. The officers and sergeant identified the individual as defendant Woodson. Officer Trail knew defendant Woodson since starting housing patrol seven years prior. He had numerous contacts with defendant in the couple of months prior to April 2011. Officer Hopkins knew defendant through numerous previous contacts. Sergeant McDevitt knew defendant because he had participated in defendant's arrest four months prior.

In continued observation of defendant Woodson, Sergeant McDevitt walked closer to the front window of the substation and observed defendant Woodson look in his direction and immediately become nervous. Officer Trail and Sergeant McDevitt then observed defendant Woodson cease his interaction with the unidentified female and walk away and then walk back past the female. Sergeant McDevitt observed that when defendant Woodson walked back past the unidentified female she stepped out into the street to avoid him.

Based on Officer Trail's previous encounters with defendant Woodson, he believed defendant was still on parole, and he advised the officers and sergeant of this. Sergeant McDevitt and Officer Hopkins knew defendant Woodson did not live in the Sunnydale Housing complex. Both officers and Sergeant McDevitt also knew that a confidential informant had indicated to

4

Sergeant Kevin Knoble, with the Gang Task Force of the SFPD, that defendant Woodson was dealing narcotics and carrying a firearm in the Sunnydale area. After receiving these tips from the informant, Sergeant Knoble relayed the information to Sergeant McDevitt and Officers Trail, Hopkins, and Uang because based on his previous work with this informant, he believed the tips to be valuable and reliable.

Thus, based on their prior contacts with defendant Woodson, knowledge of his criminal history, knowledge of the tips received from an informant, and their observation of defendant Woodson that day, the officers and sergeant collectively decided to check on the unidentified female's well being and also determine if a crime had occurred. When the officers and sergeant exited the substation, they observed defendant Woodson begin to quickly walk away from them. They approached defendant Woodson with caution because the information they had suggested he may be armed. Sergeant McDevitt walked toward the unidentified female to ask if she was alright, but she appeared to be upset and would not respond. Officers Hopkins and Uang started to walk toward defendant Woodson in an effort to speak with him. Sergeant McDevitt observed defendant Woodson look over his shoulder at him as he was attempting to speak with the female and observed that defendant had a startled expression. Sergeant McDevitt told defendant to "Wait up," but defendant Woodson turned away. Officer Uang said, "Hey! Stop. I want to talk to you." Defendant Woodson began to run toward the housing development and away from the officers and sergeant. At that time, Officers Hopkins and Trail believed defendant Woodson violated California Penal Code section 148 for resisting and obstructing lawful police investigation.

Officers Hopkins and Uang commenced a foot pursuit of defendant. Sergeant McDevitt ran parallel to the chase. Officer Trail drove the marked patrol car to try and head off defendant based on repeated radio transmissions of the direction that defendant was traveling. While in foot pursuit of defendant, Sergeant McDevitt observed him stop briefly at a large bush and deposit an unknown object at the base of a bush and continue running. Given Sergeant McDevitt's specialized training and years of experience with drug and firearm related offenses, his knowledge of defendant Woodson's recent drug arrest, and the manner and method by which defendant

5

Woodson deposited the unidentified object, Sergeant McDevitt believed defendant had either deposited drugs or a gun in the bush.

From the patrol car, Officer Trail located defendant Woodson, who was still running. Officer Trail exited the patrol car. He drew his gun, ordered defendant to lay down on his stomach, and told him he was under arrest. Officer Trail radioed that he had defendant Woodson at gunpoint. Officers Hopkins and Uang responded to the radio transmission, arrived on the scene, and handcuffed defendant Woodson. Officer Hopkins conducted a search incident to arrest of defendant Woodson and found in his right front pants pocket a plastic baggie containing multiple white rocks, which, based on his training and experience, he believed to be a cocaine base. He also found numerous one dollar bills folded in half in defendant Woodson's front right pants pocket. Because defendant Woodson was behaving aggressively and attempted to stand up Officer Hopkins radioed for additional assistance. Officers Gonzalez and Periera arrived to assist and transported defendant Woodson to the Ingleside station. Meanwhile, Sergeant McDevitt, who had returned to the bush where he observed defendant Woodson deposit an unknown object, found a large clear plastic baggie containing a suspected cocaine base, and informed Officers Trail and Hopkins of his find.

Sergeant McDevitt seized the baggie containing the suspected cocaine base and took it to the Ingleside station and turned it over to Officer Hopkins for presumptive drug testing. The substance retrieved from the baggie Sergeant McDevitt found in the bush weighed 25.9 grams (gross weight) and tested positive for cocaine. The substance retrieved from defendant Woodson's pants pocket, weighed 14.3 grams (gross weight) and also tested positive for cocaine. A plastic baggie of suspected cocaine salt also seized from the scene weighed 0.9 grams (gross weight). Officer Hopkins submitted the narcotics in a sealed envelope to the narcotics drop at 850 Bryant Street in San Francisco, California.

At the Ingleside station, Officer Androvich conducted a booking counter search of defendant Woodson and located $300 dollars in his left sock. Sergeant McDevitt authorized a strip search of defendant Woodson. The submissions do not indicate what, if anything, this search yielded.

\*　　　　\*　　　　\*

On August 9, 2011, defendant Woodson was indicted on two counts and one forfeiture allegation: (1) Count one for possession with the intent to distribute a controlled substance on December 24, 2010, in violation of 21 U.S.C. 841(a); (2) Count two for possession with intent to distribute a controlled substance on April 9, 2011, in violation of 21 U.S.C. 841(a); and (3) Forfeiture allegation for criminal forfeiture on December 24, 2010, and April 9, 2011, in violation of 21 U.S.C. 853. Defendant Woodson moves to suppress "the evidence seized" in the alleged unconstitutional searches on December 24, 2010, and April 9, 2011, and "any statements made by him" (Br. 1). Defendant Woodson did not submit a declaration. In fact, there were no materials appended to his motion to suppress.

At the hearing, defense counsel represented that she had recently received and reviewed a transcript from a state preliminary hearing relating to defendant's arrest on December 24, 2010. Defense counsel requested and was granted an opportunity to submit the transcript and additional evidence in support of the motion to suppress. The government was provided an opportunity to respond. Defense counsel submitted a supplemental filing that reintroduces arguments on the merits and also appended a declaration of counsel. The basis for defense counsel's request for an extension of time to file supplemental materials was to submit additional evidence; counsel did not do so.

**ANALYSIS**

Based on the foregoing findings of fact, the order concludes that the parole search of defendant Woodson on December 24, 2010, was lawful, so too, was the arrest and search incident to his arrest on April 9, 2011. Thus, the evidence obtained as a result of the searches and arrest need not be suppressed. Further, defendant Woodson does not have standing to challenge the seizure of the narcotics he deposited in the bush on April 9, during the foot pursuit.

Defense counsel contends that there should be an evidentiary hearing on facts relating to both incidents and that the officers unlawfully stopped, seized, and searched defendant Woodson on December 24, and again on April 9.

### 1. NO NEED FOR AN EVIDENTIARY HEARING.

Defense counsel requests an evidentiary hearing, asserting that there are contested facts at issue. A district court "ordinarily is required [to hold an evidentiary hearing] if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (citation omitted).

Here, in the opening brief, defense counsel "disputes that legal justification for the arrests exists . . . [and] requests that the court hold an evidentiary hearing to determine the facts of the arrests and seizures" (Br. 1). On reply, she contends that an evidentiary hearing is needed to determine the following: (1) whether the officers knew defendant Woodson was on parole prior to their search of him on December 24, and whether defendant Woodson was actually on parole at the time; (2) whether defendant Woodson "broke the law while police chased him"; (3) whether as to the incident on April 9, the tips the officers received were reliable (counsel also addresses this in the closing paragraph of her opening brief); and (4) whether defendant Woodson discarded a bag of narcotics under a bush (Reply Br. 1, 7).

*First*, the government appends sworn declarations of Officers Johnson and Bernard, who were both involved in the incident on December 24. Officer Johnson states she had knowledge prior to her parole search of defendant Woodson that he was on parole. This knowledge was based on her previous investigation of defendant Woodson as a person of interest in a homicide. Additionally, Officer Bernard states in his sworn declaration that prior to the parole search, he conducted a record check of defendant from the patrol car and determined defendant was on active parole.

On reply, attempting to create an issue of material fact, defense counsel appends her own declaration and a Computer Assisted Dispatch ("CAD") report. Defense counsel argues that because the CAD provides no indication that a record check was conducted prior to the officers' alleged parole search of defendant the Court should conduct an evidentiary hearing to determine if the officers did, in fact, conduct a record check. But, the SFPD Unit History Detail report for Officers Johnson and Bernard, accepted into the record by this order, corroborates the officers'

8

sworn declarations, showing a record check prior to the parole search (Luskey Suppl. Exh. A) (indicating a record check at "11:51:42 M238 Query N Woodson/Vincent BM 35" and a traffic stop approximately two minutes later at "11:53:20 DP08 Tfc-Stop 103581236 C/585 Geneva Ave/Prague St @ 6LUN391, 2 OB SH OWN"). Moreover, defense counsel puts forward no reason as to why this Court should not trust the sworn uncontradicted declarations of Officers Johnson and Bernard, which unequivocally stated that they knew defendant was on parole based on Officer Johnson's personal knowledge learned from her previous investigation of defendant and Officer Bernard's record check. No dispute as to an issue of material fact exists with regard to the incident on December 24.

*Second*, defense counsel's contention that an evidentiary hearing is needed to determine if defendant "broke the law while police chased him" is unclear and does not specify what facts are in dispute.

*Third*, defense counsel disputes the reliability and accuracy of the confidential informant's tips that defendant Woodson was selling narcotics and carrying a firearm in the Sunnydale Housing area. However, Sergeant Knoble, who received the tips and relayed them to the officers and Sergeant McDevitt, submitted a declaration explaining in detail his basis for believing the informant's tips to be reliable — namely the informant's information proved reliable in the past and resulted in viable investigations or arrests and the informant had corroboration for this evidence. Defense counsel offers no facts and submits no evidence that create a dispute as to a material issue of fact on this point. Thus, an evidentiary hearing to test the reliability of the informant's information — especially given the fact that defendant Woodson was found in possession of narcotics on December 24, and again on April 9 — is not warranted.[2]

---

[2] In post-hearing supplemental briefing, instead of submitting additional *evidence* in support of the motion, as the Court had permitted defense counsel to do, counsel submitted additional *argument*. Counsel requested that the Court require the government to produce the informant *in camera* for a credibility determination (Leary Suppl. Decl. at 5 (declaring "[i]t is [defense counsel's] belief from [her] discussions with other lawyers and from reading the newspapers that San Francisco police are under investigation for lying about their justifications for arresting people")). In support of this request, counsel cited *United States v. Sanchez*, No. 11-333, 2011 U.S. Dist. LEXIS 105689 * 4–5 (N.D. Cal. 2009) (SI), wherein Judge Susan Illston ordered *in camera* disclosure of confidential witnesses after defendants argued that the officers were lying about the existence of such confidential witness. But in that case, the court stated, "the well-publicized accusations of serious misconduct and lying by some of the officers in this case . . . raise the questions of whether the

9

*Fourth*, defense counsel disputes that defendant Woodson discarded narcotics under a bush. She provides no basis for this alleged factual dispute. It would have been easy for counsel to submit her client's declaration on this point, but she did not. And at the hearing, when provided another opportunity to submit her client's declaration, she refused. With regard to the incident on April 9, the government appends the sworn declarations of Officers Trail and Hopkins and Sergeants McDevitt and Knoble. Sergeant McDevitt's sworn declaration indicates he observed defendant discard an object he believed, based on his specialized training and knowledge of defendant, and the circumstances at the time, to be either drugs or a gun. He also stated that he did, in fact, locate cocaine under the bush. Defense counsel cannot brew up a dispute as to a material issue of fact by merely disputing the government's contentions with no basis of support whatsoever.

Defense counsel's mere refusal to accept the uncontradicted evidence does not create a material issue of fact requiring an evidentiary hearing. "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a significant disputed factual issue exists such that a hearing is required." *See United States v. Howell*, 231 F.3d 615, 620–21 (9th Cir. 2000) (internal quotations and citations omitted). An evidentiary hearing is not required.

2. **PAROLE SEARCH ON DECEMBER 24, 2010.**

Defense counsel contends that the officers' warrantless traffic stop of defendant Woodson to conduct a parole search was unlawful and that the cocaine seized along with any statements made by defendant Woodson should be suppressed. It is undisputed that the officers did not have a warrant to effect a traffic stop and search defendant Woodson. Thus, the government must prove that the stop and search fell within an exception to the warrant requirement.

*First*, defendant Woodson was on active parole on December 24, 2010. The California Department of Corrections and Rehabilitation Parole Report confirms he was on parole from

confidential informant actually exists, and whether the police report authored by the [officer] accurately documents . . . the information the informant provided." *Ibid*. That concern was the basis of the court's order of *in camera* disclosure of the confidential witness. There is not evidence of any such allegations here, warranting *in camera* review.

10

February 6, 2007, through January 28, 2011 (Luskey Exh. C). The California Department of Corrections Notice and Conditions of Parole Form, signed by defendant establishes that his parole included a warrantless search condition (Luskey Exh. D). Further, California law requires that every parolee, like our defendant be, "subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." CAL. PENAL CODE § 3067(a). Defense counsel requests that this Court read the warantless search condition of defendant's parole narrowly to not include effecting a traffic stop in order to conduct a parole search because this "condition is obviously rife for abuse" (Reply Br. 5). This request is not compelling, as defense counsel offers no legal argument in support. And if the Court chose to grant the request, it would result in a decision that flies in the face of the clear conditions set forth in defendant's terms of parole and Section 3067(a) of the California Penal Code.

*Second*, Officers Johnson and Bernard knew defendant Woodson was on active parole prior to Officer Johnson's parole search of him. Officer Johnson stated in her sworn declaration that she "immediately recognized the driver to be Vincent Woodson," who she knew was on "Active Parole out of Daly City with his primary offense being a violation of Health and Safety Code section 11351.5" (Johnson Decl. ¶¶ 3–4; *see* Luskey Exh. B at 1). She was aware of defendant Woodson's active parole status because she learned of it during her investigation of defendant Woodson as a person of interest in an ongoing homicide investigation. Additionally, Officer Bernard conducted a parole check of defendant Woodson to confirm his active parole status (Bernard Decl. ¶ 4). Only after confirming defendant's status as an active parolee did the officers make the decision to effect a traffic stop to conduct a parole search (Johnson Decl. ¶¶ 4–5; Bernard Decl. ¶¶ 3–4).

*Third*, the law is settled that a suspicionless search of a parolee does not violate the Fourth Amendment. *Sampson v. California*, 547 U.S. 843, 846, 857 n.5 (2006) (stating an "officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee"). The Supreme Court upheld the constitutionality of suspicionless searches of parolees (*id.* at 854):

11

> California's ability to conduct suspicionless searches of parolees serves its interest in reducing recidivism, in a manner that aids, rather than hinders, the reintegration of parolees into productive society . . . The California Legislature has concluded that, given the number of inmates the State paroles and its high recidivism rate, a requirement that searches be based on individualized suspicion would undermine the State's ability to effectively supervise parolees and protect the public from criminal acts by reoffenders. This conclusion makes eminent sense. Imposing a reasonable suspicion requirement . . . would give parolees greater opportunity to anticipate searches and conceal criminality.

The officers' traffic stop and Officer Johnson's parole search of defendant Woodson was reasonable and not arbitrary, capricious, or harassing because the officers knew, prior to the parole search of defendant, that he was on active parole. Thus, the parole search was lawful.

3. **SEIZURE OF ABANDONED PROPERTY, ARREST, AND SEARCH INCIDENT TO ARREST ON APRIL 9, 2011.**

Defense counsel contends that defendant's warrantless arrest and search incident to arrest were unlawful and that "[a]ny statements made by Mr. Woodson would have been fruits of the unlawful search and seizure and should likewise be suppressed" (Br. 4). The government bears the burden to show that a warrantless arrest did not violate the Fourth Amendment.

A. **Seizure of Abandoned Property.**

In her opening brief, defense counsel does not challenge the seizure of the baggie of cocaine Sergeant McDevitt recovered from under the bush where he had observed defendant discard it during his foot pursuit of defendant. On reply, however, she argues that because defendant's "flight was not headlong . . . he maintains an expectation of privacy in the bag seized by Officer McDevitt." However, she also disputes that defendant Woodson "placed or discarded a bag of narcotics under a bush" (Reply Br. 6, 7). The government argues that defendant lacks standing to challenge the seizure of this baggie of cocaine because he abandoned it.

"There can be nothing unlawful in the Government's appropriation of . . . abandoned property." *Abel v. United States*, 362 U.S. 217, 241 (1960). A defendant who abandons property relinquishes his expectation of privacy in the item, and thus, has no standing to contest its search or seizure. *Id.* at 240–41. "[A]bandonment is primarily a question of intent and . . . may be inferred from words, acts and other objective facts." *United States v. Cella*, 568 F.2d 1266, 1283 (9th Cir. 1977); *see United States v. McLaughlin*, 525 F.2d 517, 519–20 (9th Cir. 1975)

12

(concluding in an order affirming the district court's denial of defendant's motion to suppress, that defendants abandoned their privacy interest in contraband by throwing it out of a truck as they were being chased by officers in a vehicle pursuit).

Here, defendant relinquished physical control of a baggie of cocaine when he discarded it under a bush (McDevitt Decl. ¶ 6). Physical relinquishment of control of the baggie of cocaine, just like discarding contraband from a truck while being pursued by police, is sufficient to extinguish any reasonable expectation of privacy. Defense counsel states that the officers' "chase provoked Mr. Woodson to leave" and because defendant's "exit was not headlong it was rather, just walking away" he maintains an expectation of privacy in the baggie seized by Sergeant McDevitt (Reply Br. 7). Defense counsel cites no law to support her argument.

Defendant does not have standing to challenge the seizure of the baggie of cocaine Sergeant McDevitt observed defendant discard under a bush and which Sergeant McDevitt returned successfully to retrieve.

### B. Lawful Arrest and Search Incident to Lawful Arrest.

Defense counsel contends that the government cannot show that the warrantless arrest and search incident to defendant Woodson's arrest was lawful because "Mr. Woodson committed no crime whatsoever as he stood talking to the unknown woman" (Br. 4). "Absent probable cause, a warrantless arrest is illegal." *United States v. Ortiz-Hernandez*, 427 F.3d 567, 573 (9th Cir. 2005). A warrantless arrest is permissible under the Fourth Amendment if "at the time of the arrest, the facts and circumstances within [the officers'] knowledge and of which they [had] reasonably trustworthy information [were] sufficient to warrant a prudent man in believing that the defendant committed an offense." *United States v. Henderson*, 241 F.3d 638, 648 (9th Cir. 2000) (internal quotations omitted). Officers must have probable cause at the time of the arrest. *Wong Sun v. United States*, 371 U.S. 471, 482 (1963).

At the time of arrest, the officers had probable cause to believe the defendant had committed at least two crimes: (1) resisting, delaying, obstructing an officer in discharge of his duty and (2) possession of a controlled substance.

13

Our court of appeals has instructed that where there is at least minimal communication between officers working together, the arresting officer need not have personal knowledge of all of the acts which gave rise to probable cause. *United States v. Ramirez,* 473 F.3d 1026, 1032–33 (9th Cir. 2007); *see United States v. Bernard,* 623 F.2d 551, 560–61 (9th Cir. 1979) ("In effect all of them participated in the decision to make the arrests . . . [one officer] was entitled to rely on the observations and knowledge of [the others], even though some of the critical information had not been communicated to him"). The record establishes more than minimal communication between the officers and sergeant during the incident on April 9, 2011.

At the time of arrest the officers knew defendant had been arrested four months prior and found in possession of a cocaine base. Indeed, Sergeant McDevitt, then an officer, was personally involved in that previous arrest (Luskey Exh. F at 1; McDevitt Decl. ¶ 3). The officers were aware of the defendant's criminal history (Hopkins Decl. ¶ 7; Trail Decl. ¶ 3; McDevitt Decl. ¶ 3). They knew defendant Woodson had been involved in a verbal altercation with an unidentified female on the day of the incident at issue (Hopkins Decl. ¶ 4; Trail Decl. ¶ 5; McDevitt Decl. ¶ 3). They knew that when Officers Trail and Hopkins and Sergeant McDevitt approached defendant to inquire about the yelling altercation that day that he walked away from them (Hopkins Decl. ¶ 5; Trail Decl. ¶ 6; McDevitt Decl. ¶ 5). And that when one officer and Sergeant McDevitt asked him to stop walking away because they wanted to talk to him that defendant took off running in obstruction of a police investigation (Hopkins Decl. ¶ 5). They also knew about the tips Sergeant Knoble received from an informant, indicating that defendant was dealing narcotics and carrying a firearm in the Sunnydale Housing development area (Knoble Decl. ¶ 4; Hopkins Decl. ¶ 4; Trail Decl. ¶ 5; Luskey Exh. F at 1). Finally, they had collective knowledge that during Sergeant McDevitt's chase of defendant he observed defendant discard an object under a bush in a manner he identified, based on his specialized training and experience, to be consistent with an individual who was attempting to hide or distance himself from narcotics (McDevitt Decl. ¶ 6); *see Ramirez,* 473 F.3d at 1032–33.

Taken together all of the evidence above provided arresting Officers Trail, Hopkins, and Uang probable cause to arrest defendant. Our court of appeals has stated that flight, taken

together with other evidence may establish probable cause. *United States v. Garcia*, 516 F.2d 318, 320 (9th Cir. 1975); *see United States v. Fuentes*, 105 F.3d 487, 490 (9th Cir. 1997) (stating "flight together with other evidence gave rise to probable cause"). Defendant fled. Further, an "informant's description of illegal activity," as was the case here, "is sufficient to establish probable cause if the totality of the circumstances indicate the tip is reliable," as they did here. *United States v. Elliot*, 893 F.2d 220, 223 (9th Cir. 1990). Still, the officers had even more on which to establish probable cause. They had knowledge of the defendant's criminal history, imputed collective knowledge of Sergeant McDevitt's observation of defendant discard what he believed to be narcotics, and personally observed defendant obstructing the course of their duties. There was probable cause to arrest defendant Woodson.

Officers may search an arrestee's person subsequent to a lawful arrest of that individual. *See United States v. Robinson*, 414 U.S. 218, 235 (1973). As there was probable cause to arrest defendant, and as defendant was arrested before the search of his person, the search of his person was a lawful search incident to arrest.

### 4. SUPPRESSION IS NOT WARRANTED.

Evidence seized as the result of an illegal search or seizure is the "fruit of the poisonous tree" and should be excluded. *Wong Sun*, 371 U.S. at 484–85, 488. Because the parole search, arrest, and search incident to arrest were lawful, suppression is not warranted here. Moreover, defendant has no standing to challenge seizure of the contraband he abandoned.

## CONCLUSION

For the reasons stated above, defendant Woodson's motion to suppress is **DENIED**. A status conference will be held at **2 P.M. ON TUESDAY, NOVEMBER 29, 2011**.

**IT IS SO ORDERED.**

Dated: November 23, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

15